United States District Court
Southern District of Texas
**ENTERED**
August 22, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| Latranette Shante Johnson, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | Civil Action No. 4:20-cv-04271 |
| v. | § | |
| | § | |
| Kilolo Kijakazi, | § | |
| Acting Commissioner of Social | § | |
| Security, | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM AND RECOMMENDATION

This is an appeal from an administrative ruling that denied Plaintiff Latranette Shante Johnson's request for social security benefits, which was referred to the undersigned judge. Dkt. 21. After carefully considering the parties' briefs, the administrative record, and the applicable law, the Court recommends granting Defendant Kilolo Kijakazi's Motion for Summary Judgment (Dkt. 16) and denying Johnson's Motion for Summary Judgment (Dkt. 25).

## Background

Johnson filed for social security benefits under Title II and Title XVI on June 7, 2018 and June 11, 2018 respectively, claiming a disability onset date of January 10, 2017. R.17. Johnson claimed that she suffered from bipolar

disorder, depression, and attention deficit disorder. R.28, 279. When Johnson filed for benefits, she was 23 years old. R.28. She reported having only two short-term jobs in the 15 years prior to her application—one as a busser at Saltgrass Steakhouse and another as private security guard at a shooting range. R.280. Her claim was denied initially on January 18, 2019 and upon reconsideration on May 2, 2019. R.17. After a hearing, the administrative law judge (ALJ) issued a decision denying Johnson benefits. *See* R.17-30.

At the hearing, Johnson clarified her work history, which included several additional restaurant and security guard positions. R.95-96 (hearing testimony); *see also* R.263-69 (earnings records). She explained that she was let go from her longer-term security guard job because of interpersonal conflicts with her coworkers. R.109-10. Johnson testified that the reason for conflict was "mainly me." R.110. She stated that she can no longer work because she is "seeing things [and] hearing things" and she does not "get along with the … people that [she] work[s] with." R.100. She stopped earning income in 2018. R.95-96; *see also* R.263-69.

Johnson was questioned by the ALJ and her attorney about her healthcare and medications. She testified that she receives her healthcare through Harris County, which pays for her prescription medications. R.98. Although she had resumed taking medication by the date of the hearing, she had applied for disability when she was off medications. R.100. Johnson

2

testified that the medications "kinda, sorta" made a difference. R.101. She claimed she still felt "jitterish, still like paranoid" like people were "out to get" her. R.107. She also testified that she had "good days and bad days," and, on bad days, did not want to be around people or "be bothered." R.105. As a result, she often did not leave her apartment. *Id.* Johnson did not testify about any physical or exertional limitations that she experienced, nor did her attorney question her or the vocational expert about any potential exertional limitations. *See* R.93-115.

On February 3, 2020, the ALJ issued an opinion finding that Johnson was not disabled. R.17-30. At steps one and two, the ALJ found that Johnson met the insured status requirements of the Social Security Act and that she had not engaged in substantial gainful activity since her alleged onset date. R.19. At step three, the ALJ found that Johnson suffered only one severe impairment: bipolar disorder. R.20. But as the ALJ concluded, Johnson's prescribed medications for bipolar disorder worked well; Johnson tended to experience severe symptoms when she stopped taking them. *Id.*

The ALJ also noted that Johnson's obesity and marijuana abuse were not severe, either because they were short-term or "amenable to proper control by adherence to recommended medical management and medication compliance." R.23. As such, the ALJ concluded that Johnson was not presumptively disabled by her impairments or any combination thereof. *Id.*

3

The ALJ then determined that Johnson had a residual functional capacity (RFC) to "perform a full range of work at all exertional levels."  R.25. But the ALJ also found that Johnson could only perform "simple, nonproduction rate pace jobs with occasional changes to work procedures" and that she should have "only occasional interaction" with the public and with coworkers and supervisors.  *Id.*  Given this RFC, the ALJ found that Johnson could hold jobs that were available in the national economy, including those identified by the vocational expert who testified at the hearing.  R.29-30.  This included jobs such as laundry folder, office cleaner, and linen clerk.  R.29.

Johnson unsuccessfully appealed the ALJ's decision to the Social Security Administration's Appeals Council, RR.1-3, which rendered the ALJ's decision ripe for this Court's review.  *See* 42 U.S.C. § 405(g); *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000) ("[Social Security Administration] regulations provide that, if ... the [Appeals] Council denies the request for review, the ALJ's opinion becomes the final decision.").

## **Standard of Review**

A reviewing court assesses the Commissioner's denial of social security benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence."  *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (per curiam) (internal quotation marks omitted).  "Substantial

evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  It is "more than a scintilla, but it need not be a preponderance." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (quoting *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)).

When conducting its review, the Court cannot reweigh the evidence or substitute its judgment for the Commissioner's.  *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).  "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).  But judicial review must not be "so obsequious as to be meaningless." *Brown*, 192 F.3d at 496 (quotations omitted).  The court must scrutinize the record as a whole, taking into account whatever fairly detracts from the weight of evidence supporting the Commissioner's findings.  *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

<u>**Analysis**</u>

## I.  <u>Legal Framework</u>

"The Commissioner uses a sequential, five-step approach to determine whether a claimant is ... disabled: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment;

(4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity." *Morgan v. Colvin*, 803 F.3d 773, 776 (5th Cir. 2015) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)) (footnote omitted).   Before moving from step three to four, the ALJ determines the claimant's residual functional capacity, which is used to evaluate steps four and five. *Id.* at 776 n.2 (quoting 20 C.F.R. § 404.1520(a)(4)).

"Under this five-step approach, if the Commissioner determines at a prior step that the applicant is or is not disabled, the evaluation process stops ...." *Id.* at 776 (citing 20 C.F.R. § 404.1520(a)(4)).   The claimant bears the burden of proof at the first four steps. *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017).   At the fifth step, the burden of proof shifts to the Commissioner "to establish the existence of other available substantial gainful employment that a claimant can perform." *Id.* at 753-54.

## II.    The ALJ's determination was supported by substantial evidence.

On appeal, Johnson argues (1) that substantial evidence does not support the ALJ's RFC determination because he did not rely on medical opinions; and (2) that the ALJ failed to consider the effects of Johnson's obesity when formulating his RFC.   Because Johnson did not carry her burden on either point, the Court recommends affirming the ALJ's determination.

**A.    The ALJ's RFC determination was supported by substantial evidence.**

Johnson first complains that the ALJ did not properly consider medical opinions from her treating mental health provider at Harris County, Dr. Chantee Vavasseur; the consulting psychologist, Dr. Jennifer Norten; or any of the state agency consultants.  Dkt. 25 at 6.  Specifically, Johnson argues that the ALJ erred in evaluating the persuasiveness of Dr. Vavasseur's opinion and failing to apply that opinion to Johnson's RFC.  *Id.* at 6-12.  According to Johnson, had the medical opinions been evaluated differently, the ALJ would have found her unable to sustain employment or would have accommodated her inability in his RFC.  *Id.* at 12.  Johnson is correct, in part.  Under the regulations, the ALJ must explain the reason he finds medical opinions to be persuasive or unpersuasive—which he did not do.  But because the ALJ's failure to explain was not prejudicial, it does not merit reversal.

1.    <u>The ALJ's evaluation and application of medical opinions</u>

For claims filed on or after March 27, 2017, the Social Security Administration requires ALJs to explain how they evaluate a medical opinion's persuasiveness.  *See Shugart v. Kijakazi*, 2022 WL 912777, at *3 (S.D. Tex. Mar. 29, 2022) (citing 20 C.F.R. §§ 404.1520c, 416.920c).  "In evaluating persuasiveness, the ALJ considers five factors: (i) supportability; (ii) consistency; (iii) the source's relationship with the patient; (iv) the source's

specialty; and (v) 'other factors that tend to support or contradict' the opinion."
*Id.* (citing and quoting 20 C.F.R. § 404.1520c(c)). Among those factors, the most important are supportability and consistency. *Id.* (citing § 404.1520(c)(b)(2)).

Under these new rules, a "sufficient explanation of the supportability and consistency of medical opinions is still a critical portion of the analysis." *Pearson v. Comm'r of Soc. Sec.*, 2021 WL 3708047, at *5 (S.D. Miss. Aug. 11, 2021), *report and recommendation adopted*, 2021 WL 3663073 (S.D. Miss. Aug. 18, 2021). But "[c]onsidering the regulations' newness," the Court was unable to find controlling authority as to "what constitutes a sufficient 'explanation' of supportability and consistency under 20 C.F.R. § 404.1520c(b)(2)." *Shugart*, 2022 WL 912777, at *3. Courts addressing the issue, however, have required that "there be a discernible 'logic bridge' between the evidence and the ALJ's persuasiveness finding." *Pearson*, 2021 WL 3708047, at *5 (collecting cases). A generic statement or summary that a medical provider's opinion is inconsistent with the record as a whole does not suffice because "the Court cannot undertake a meaningful review of the ALJ's consideration" of the medical opinions. *Id.* at *7; *Cooley v. Comm'r of Soc. Sec.*, 2021 WL 4221620, at *7 (S.D. Miss. Sept. 15, 2021) (same). Without guidance from the ALJ, the reviewing court can only speculate about his reasons for finding an opinion unpersuasive. *Ramirez v. Saul*, 2021 WL 2269473, at *6 (W.D. Tex. June 3, 2021); *Pearson*, 2021 WL 3708047, at *5.

Here, the ALJ found that Dr. Vavasseur's opinions were not "persuasive as it is inconsistent with the objective medical evidence." R.27. The specific opinions that the ALJ rejected were that Johnson had "irritability leading to difficulty in social interactions and difficulty maintaining work" and "difficulty with concentration [that] affected the ability to function at home or maintain steady work." *Id.* Yet the ALJ's decision does not explain what objective medical evidence contradicts Dr. Vavasseur's opinions. *See* R.25-28.

This lack of detail contrasts markedly with the ALJ's discussion of other opinions from state medical examiners, which the ALJ deemed unpersuasive by incorporating myriad evidence set forth in the ALJ's step three analysis. *Id.* ("The opinions are inconsistent with the objective medical evidence and inconsistent with the paragraph 'B' findings noted above in the opinion."). In that portion of the decision, the ALJ provided a detailed discussion of treatment notes from nine appointments from February 2017 to October 2019, which the ALJ found to conflict with—and thus to undermine—the opinions of agency physicians.[1] R.21-23.

---

[1] Notably, both state agency physicians found that Johnson did not qualify as disabled. *See generally* R.116-26 (January 16, 2019 disability determination by Jean German, PhD), R.128-38 (same); R.141-52 (April 30, 2019 re-consideration determination by Mark Schade, Phd); R.153-64 (same). In doing so, they found that she was even more capable of adaptation and social interactions than what was included in her RFC. *See, e.g.*, R.162 (explaining that Johnson could "interact adequately with coworkers and supervisors" and "respond appropriately to change in

Accordingly, on its face, the opinion does not provide the "logic bridge" necessary to evaluate the ALJ's persuasiveness finding about Dr. Vavasseur. *Pearson*, 2021 WL 3708047, at *5. The ALJ should have described his reasons for not incorporating Dr. Vavasseur's opinion into his RFC, and his failure to do so was error.

### 2.  Harmless error

Having determined that the ALJ erred, the Court turns to the question of whether the ALJ's error was harmless. *See generally Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (analyzing an ALJ's failure to provide an explanation for a different step-three finding). "Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (affirming district court's decision to uphold denial of benefits). "Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error." *Shugart*, 2022 WL 912777, at *4 (quoting *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006)). The ALJ's error here was harmless.

Johnson argues that the ALJ's failure to explain his persuasiveness determination for Dr. Vavasseur constitutes reversible error, because Dr.

---

routine work setting"). The ALJ's decision to deem these opinions unpersuasive was therefore beneficial to Johnson—not another failure, as Johnson implies.

Vavasseur's opinions are actually consistent with the opinions of the consultative provider, Dr. Norten. Dkt. 25 at 9-11 (comparing opinions from Drs. Vavasseur and Norten). According to Johnson, the ALJ's finding that Dr. Vavasseur was persuasive, but Dr. Norten was not, is internally inconsistent and unexplained—which indicates that the ALJ's ultimate RFC was not supported by substantial evidence. *Id.*

Johnson's argument mischaracterizes these providers' opinions. Neither says that she simply "cannot" sustain full-time employment, as Johnson asserts. *See id.* at 10. Rather, these providers noted that she would have "difficulty" in social interactions and training, making it "difficult" to maintain employment. *See, e.g.*, R.405 (Dr. Norten treatment note); R.575 (Dr. Vavasseur treatment note). The ALJ's RFC accounted for such difficulty—not impossibility—that Johnson may experience with respect to concentration, workplace pressures, and social interactions. Indeed, the RFC limits her to "simple, nonproduction rate pace jobs with occasional changes to work procedures" and "only occasional interaction" with others. R.25.

Moreover, the medical record supports the ALJ's ultimate decision regardless of his inadequate explanation. In formulating Johnson's RFC, the ALJ found that "the evidence shows that when the claimant takes her medications, her symptoms are more controlled. It was when she stopped taking her medications that her symptoms return." R.27. This finding is

11

consistent with Johnson's admissions that her medications "kinda, sorta" make a difference and that she does worse as the day goes on because the prior night's medication wears off.  R.100-01.  It is also supported by Johnson's mental health records.  As detailed by the ALJ, in five out of the nine appointments, Johnson reported inconsistency with taking her medications—but in the other appointments, she reported feeling better or wanting additional medication.  *See* R.21-23 (ALJ's step three discussion of Johnson's 2017-2019 appointments).  For example, Johnson was examined by Dr. Vavassuer shortly before applying for benefits on May 23, 2018 and reported that she had been off medication for several months.  R.502.  She was placed on a medication plan but was warned that the medications would not take full effect for four to six weeks.  *Id.*  When she returned for a follow up on July 19, 2018—a month after her application—she reported taking her medications and experiencing no side effects.  R.521.  Dr. Vavassuer noted that Johnson's "risk of harm is low today" and "[s]he is tolerating the medications well."  R.525.

As such, the ALJ's finding that Johnson can manage her symptoms with medications is well supported by substantial evidence.  And "[i]f an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability."  *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988).  The ALJ's failure to provide an explanation for disregarding certain opinions from Dr. Vavassuer are therefore harmless, as

12

even Johnson's medical records from Dr. Vavasseur indicate that her bipolar disorder can be managed—thereby rendering it incapable of supporting her disability claim.  Reversal or remand is unwarranted.

## B.    The ALJ adequately considered Johnson's obesity.

For her second issue, Johnson argues that the ALJ failed to account for her obesity, in violation of SSR 19-2p, 2019 WL 2374244 (May 20, 2019).[2]  Dkt. 25 at 13-15.  She contends that the ALJ failed to evaluate her "obesity in combination with her mental impairments" and incorporate that impact in Johnson's RFC.[3]  Johnson has failed to carry her burden on this issue as well.

Although obesity itself is not an impairment, it can reduce a claimant's functional ability when combined with other impairments.  *Gonzales v. Kijakazi*, 2021 WL 3777181, at *4 (S.D. Tex. Aug. 3, 2021) (citing *Perkins v. Berryhill*, 2019 WL 2997082, at *2 (N.D. Tex. June 21, 2019)).  When evaluating the impact of obesity, the ALJ must consider it at all steps of the sequential evaluation process and perform "an individualized assessment of

---

[2] Johnson's counsel cites SSR 12-2p, 2012 WL 3104869 (July 25, 2012), which is the agency policy interpretation ruling for evaluating *fibromyalgia*.  The Court presumes this is a typographical error and analyzes the issue under SSR 19-2p, which is the policy interpretation for evaluating obesity.

[3] When stating the issues, Johnson embedded a conclusory statement that the ALJ failed to find that Johnson's obesity was a "severe and/or non-severe impairment." Dkt. 25 at 5, 13.  The Court need not address this argument, as Johnson did not develop it and, in any event, the ALJ explicitly found that Johnson's obesity is non-severe.  R.23.

the impact of obesity on an individual's functioning when deciding whether the impairment is severe." *Perkins*, 2019 WL 2997082, at *2 (citing the predecessor to SSR 19-2p)); SSR 19-2P, 2019 WL 2374244, at *2 ("Obesity in combination with another impairment(s) may or may not increase the severity or functional limitations of the other impairment(s).  We evaluate each case based on the information in the case record.").  The ALJ complied with his obligation.

As a preliminary matter, Johnson did not claim obesity as an impairment when she filed for social security benefits.  R.279 (Johnson's questionnaire alleging bipolar disorder, depression, and attention deficit disorder).  At that time, she weighed 185 pounds.  *Id.*  When the hearing occurred about over eighteen months later, Johnson testified that she weighed 209 pounds.  R.97.  She did not testify about how her increased weight had affected her daily life, such as her ability to walk, climb, lift, or sleep.  *See generally* R.91-115 (hearing transcript).  Her counsel focused solely on Johnson's mental impairments, declining to question Johnson *or* the vocational expert about any exertional limitations.  R.102-04 (counsel's argument on listing 12.03, 12.04, and 12.06, all of which fall within 12.00's "Mental Disorders – Adult" classification); R.112-14 (counsel's questioning of the vocational expert).  To the contrary, when Johnson's counsel asked the vocational expert to assume that Johnson had a marked limitation, he

14

described that marked limitation as one that affects "her ability to respond to changes in work settings and work in coordination with others." R.112.

Accordingly, at the time the ALJ issued his decision, Johnson had presented evidence for and claimed functional limitations arising only out of her bipolar disorder. Thus, in his opinion, the ALJ acknowledged Johnson's obesity diagnosis but found it not severe because it could last for less than twelve consecutive months and it was "managed medically and should be amenable to proper control by adherence to medical management and medication compliance...." R.23. He issued an RFC that is consistent with and accommodates her mental limitations. *See* R.25; *see also supra* Part.II.A.1.

Other than pointing to evidence of her fluctuating-but-high body mass index, Johnson has presented no evidence that her obesity impacted her functioning in any way, nor has she argued that specific, appropriate accommodations or limitations were omitted from her RFC. Without such evidence and correlations, Johnson has not shown that obesity impacted her ability to sustain work. *Gonzalez*, 2021 WL 3777181, at \*4; *Dennis v. Berryhill*, 2018 WL 1318982, at \*8 (N.D. Tex. Mar. 13, 2018) (claimant's failure to offer evidence that obesity impacted her ability to sustain work made her argument "merely speculative"); *see also Scott v. Colvin*, 2013 WL 6047555, at \*11 (S.D. Tex. Nov. 14, 2013) (finding no error in the ALJ's consideration of claimant's

obesity when she "offered no testimony or evidence to explain how her obesity limited her ability to work"). Thus, the ALJ's decision should stand.

### Recommendation

Accordingly, the Court **RECOMMENDS** that Defendant's Motion for Summary Judgment (Dkt. 16) be **GRANTED** and that Plaintiff's Motion for Summary Judgment (Dkt. 25) be **DENIED.**

**The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.** *Ortiz v. City of San Antonio Fire Dep't*, **806 F.3d 822, 825 (5th Cir. 2015).**

Signed on August 22, 2022 at Houston, Texas.

Yvonne Y. Ho
United States Magistrate Judge